UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LAURA BOUSTANI, et al.,** ) | **CASE NO. 1:06CV2065** |
| ) | |
| **Plaintiff,** ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| **vs.** ) | |
| ) | **OPINION AND ORDER** |
| **J. KENNETH BLACKWELL,** ) | |
| ) | |
| **Defendant.** ) | |

**CHRISTOPHER A. BOYKO, J**.:

On August 29, 2006, Plaintiffs, Laura Boustani, et al., filed their Complaint for Declaratory and Injunctive Relief (ECF DKT #1) and their Motion for Preliminary Injunction (ECF DKT #3), seeking to enjoin the enforcement of amended R.C. § 3505.20, on the grounds that it imposes an undue burden on the fundamental right to vote of naturalized citizens in Ohio; subjects naturalized citizens to disparate treatment in violation of the Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1964 (42 U.S.C. §1971); and constitutes an unconstitutional poll tax in violation of the Fourteenth and Twenty-Fourth Amendments.  Following an oral hearing on October 4, 2006, this Court granted a Permanent Injunction, specifically finding the questioned portions of R.C. §

3505.20 – (A)(2), (3), (4) and the text immediately thereafter – unconstitutional. (October 4, 2006 Opinion and Order, ECF DKT #18).  This Opinion provides a thorough substantiation and expanded rationale for the Court's earlier ruling.

## I. BACKGROUND

R.C. § 3505.20, as amended (effective June 1, 2006) states, in pertinent part, as follows:

> "(2) Are you a native or naturalized citizen?
>  (3) Where were you born?
>  (4) What official documentation do you possess to prove your citizenship?  Please provide that documentation.
>   If the person offering to vote claims to be a naturalized citizen of the United States, the person shall, before the vote is received, produce for inspection of the judges a certificate of naturalization and declare under oath that the person is the identical person named in the certificate.  If the person states under oath that, by reason of the naturalization of the person's parents or one of them, the person has become a citizen of the United States, and when or where the person's parents were naturalized, the certificate of naturalization need not be produced.  If the person is unable to provide a certificate of naturalization on the day of the election, the judges shall provide to the person, and the person may vote, a provisional ballot under section 3505.181 of the Revised Code.  The provisional ballot shall not be counted unless it is properly completed and the board of elections determines that the voter is properly registered and eligible to vote in the election."

Thus, documentation of citizenship could be demanded of some voters as part of a challenge process.  Any election judge would have unbridled discretion to challenge any voter's citizenship without any guidelines.  Those challenged voters, who are naturalized citizens, would be required to produce a naturalization certificate for inspection by an election judge in order to cast a regular ballot.  Previously, naturalized citizens, who were challenged, could either produce their naturalization papers for inspection, or state under oath where and when they were naturalized and that their naturalization certificate was lost, destroyed, or beyond their power to produce.  This Court notes the naturalization certificate is not as easily

transportable as a wallet-sized driver's license. Rather, it is an eight and one-half by eleven-inch document with an original photograph of the naturalized citizen in the bottom left corner. Naturalized citizens are rarely asked to produce the document, and normally do not carry it on their person. Under the new law, then, a voter (who is a naturalized citizen without a certificate in hand) would be required to cast a provisional ballot and then produce "additional information" to the Board of Elections within ten days.

As a matter of background, if a certificate of naturalization is lost, mutilated, or destroyed, or if a name has been changed due to marriage, divorce or legal name change, a form must be submitted to the United States Citizenship and Immigration Service, accompanied by two recent passport-style photos. The fee for a replacement certificate is Two Hundred Twenty Dollars ($220.00). There is a process available to request a waiver of the fee; but that process involves an inquiry into the applicant's age, financial status, employment, living arrangements and family relationships. If the waiver is denied, the process must be initiated all over again. According to the United States Citizenship and Immigration Service, an applicant can expect to wait up to one year to receive a replacement certificate. Therefore, a voter challenged under R.C. § 3505.20 would be unlikely to produce the required documentation within ten days to the Board of Elections. Moreover, Plaintiffs point out that the language of R.C. § 3505.20 provides no guidance to the County Boards of Elections as to which documentation constitutes valid proof of citizenship; and therefore, which provisional ballots will be counted.

## **II. ANALYSIS**

R.C. § 3505.20 (A)(2), (3), and (4) discriminates against naturalized citizens with respect to the fundamental right to vote. Courts must apply a strict scrutiny examination to laws that discriminate based on national origin. Those portions of R.C. § 3505.20, highlighted above, target naturalized citizens for differential treatment; facially discriminate against one group of citizens with regard to their right to vote; and cast them as "second-class citizens."

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17-18 (1964).

Again, statutes that discriminate as to the fundamental right to vote are subject to strict scrutiny, and are invalid unless "the State can demonstrate that such laws are necessary to promote a compelling governmental interest." *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972).

> [T]he State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. Statutes affecting constitutional rights must be drawn with precision . . . and must be tailored to serve their legitimate objectives . . . And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose less drastic means. *Id*. at 342-343.

The State is obliged to adduce proof of its actual, compelling governmental interest. *Thompson v. Western States Medical Center*, 535 U.S. 357, 373 (2002). "A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco County Democratic Central Comm*., 489 U.S. 214, 231 (1989).

> Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.
> *Purcell v. Gonzalez*, 549 U.S. _____(October 20, 2006, *Per Curiam*) at *4.

In the instant matter, neither Plaintiffs nor the Court has been able to discern the legislative intent behind amended R.C. § 3505.20. There is no legislative history nor empirical evidence of the interests the drafters desired to address. Therefore, counterbalancing the speculated State's compelling interest in preventing voter fraud is the Plaintiffs' weightier and more significant interest in exercising the "fundamental political right" to vote. *Dunn, supra* at 336. Since native-born citizens are not required to show any proof of their citizenship under R.C. § 3505.20, the statute creates an unequal application of voting requirements and lacks the justification of promoting a compelling governmental interest. One of the plaintiffs, for example, Dagmar Celeste, was naturalized decades ago, and presumably could be challenged to show proof at the polling place. However, her son, born in New Delhi, India, would be considered a native-born citizen because his father was an American diplomat. He would not be compelled to supply proof of citizenship in order to vote.

Plaintiffs also assert that amended R.C. § 3505.20 imposes an unconstitutional poll tax upon naturalized citizens in violation of the Twenty-Fourth Amendment for federal elections and the Fourteenth Amendment with regard to state elections. As discussed earlier, Ohio voters who are challenged and are unable to produce their certificates of naturalization because they are lost or a name change occurred after marriage or divorce, will be required to pay a Two Hundred Twenty Dollar replacement fee to the United States Citizenship and Immigration Service. Putting a price on the right to vote cannot survive strict scrutiny, since it bears no relation to voting qualifications and burdens a fundamental right of the citizenry. Constitutional scrutiny does not permit denial of the right to vote if an error or omission in registration or in some other prerequisite act is not **material** in determining whether such

-5-

individual is **qualified** to vote. 42 U.S.C. § 1971(a)(2)(B).

This Court harbors grave concerns about the ramifications of implementing amended R.C. § 3505.20. There is a very real possibility of "profiling" voters by poll workers or election judges exercising an unfettered ability to challenge on the basis of appearance, name, looks, accent or manner. The Ohio statute offers no clear standards to guide the inquiry into citizenship. It is offensive to single out a voter in the public polling place, thereby subjecting him or her to embarrassment or ridicule while attempting to exercise a citizenship privilege. The loss of the protected right to vote "for even minimal periods of time, constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

If a naturalized citizen approaches the polling place, lacking a copy of the naturalization certificate, that individual might be prompted to lie when asked about the nature of his citizenship, rather than be prohibited from voting. Consequently, the amended statute could foster deceit or fraud, and not prevent it, as the drafters might have envisioned.

This Court has personally presided over numerous naturalization ceremonies and has witnessed firsthand the joy of these new Americans and their intense desire to participate in this nation's democratic process. There is no such thing as a second-class citizen or a second-class American. Frankly, without naturalized citizens, there would be no America. It is shameful to imagine that this statute is an example of how the State of Ohio says "thank you" to those who helped build this country.

### III. CONCLUSION

Because amended R.C. § 3505.20(A)(2), (3), (4), and the text immediately following,

imposes an undue burden on the fundamental right to vote of naturalized citizens in Ohio; since the statute, as amended, subjects naturalized citizens to disparate treatment in violation of the Fourteenth Amendment of the United States Constitution; and since the implementation of the law offends constitutional sensibilities by categorizing naturalized individuals as "second-class citizens", and by promoting fraud or deceit in order to avoid its impact on the free exercise of their franchise, this Court finds amended R.C. 3505.20(A)(2), (3), and (4), *et seq*. unconstitutional.

**IT IS SO ORDERED**.

**DATE: October 26, 2006**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**