# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| LAURA BOUSTANI, et al., | : |
| *Plaintiffs*, | : Case No. 1:06-cv-02065 |
| v. | : Judge Christopher A. Boyko |
| FRANK LaROSE, in his official capacity as Ohio Secretary of State, | : |
| *Defendant.* | : |

## DEFENDANT'S COMBINED MOTION TO DISSOLVE THE PERMANENT INJUNCTION AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ENFORCE THE PERMANENT INJUNCTION

Now comes Defendant Ohio Secretary of State Frank LaRose, by and through counsel, who hereby moves to dissolve the permanent injunction. In combination with this motion, the Secretary also submits his response in opposition to Plaintiffs' emergency motion to enforce the permanent injunction. A memorandum in support is attached hereto.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0068762)*
  *Counsel of Record*
HEATHER L. BUCHANAN (0083032)
MICHAEL A. WALTON (0092201)
MARK D. TUCKER (0036855)
GREGORY A. RUSTICO (0104103)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, OH 43215-3428
Tel: (614) 466-2872 | Fax: (614) 728-7592
Julie.Pfeiffer@OhioAGO.gov
Heather.Buchanan@OhioAGO.gov
Michael.Walton@OhioAGO.gov

1

Mark.Tucker@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov

*Counsel for Ohio Secretary of State Frank LaRose*

# INTRODUCTION

Eighteen years ago, this Court held that Ohio Rev. Code § 3505.20(A)(2), (3), and (4) unconstitutionally subjected naturalized citizens to disparate treatment by requiring them to provide documentation proving their citizenship—a requirement not placed on their native-born peers.

Since that time, the legal landscape regarding citizenship and voting in Ohio has materially changed. Most notably, as a general matter, Ohioans who wish to vote are now functionally required to prove their citizenship—not just naturalized citizens. To cast an in-person ballot, all Ohio voters must present a valid form of photo identification that proves not only their identity but also their eligibility to vote, including citizenship. This requirement is embedded within Ohio's Constitution as well as Ohio's statutory voter identification requirements, which this Court upheld as constitutional earlier this year.

For most individuals, presenting an Ohio ID will suffice because that individual already provided proof of citizenship when they obtained their ID. Only a voter who presents an Ohio ID labeled "noncitizen," will be asked for additional documentation to verify their citizenship status. This step is no different than the documentation all other voters were asked to provide when they applied for their Ohio IDs.

Based on this shift in the voter identification process, the equal protection concerns at the heart of this Court's 2006 Order are no longer present. Ohio does not employ a process that treats naturalized citizens differently. Instead, the law requires nearly all voters—native-born and naturalized citizens alike—to prove they are citizens. The only difference is whether a particular voter proves their citizenship before an election, such as via the BMV, or at their polling station. This is not disparate treatment.

Considering these material changes, the Secretary respectfully requests that this Court dissolve the permanent injunction and deny as moot Plaintiffs' motion to enforce the permanent injunction.

**FACTUAL BACKGROUND**

**I. The Court's 2006 judgement.**

Effective June 1, 2006, Ohio Rev. Code § 3505.20 was amended to require proof of citizenship if a voter "is challenged as unqualified on the ground that the person is not a citizen." That proof required the potential voter to answer a series of four questions under oath:

> (1) Are you a citizen of the United States?
> (2) Are you a native or naturalized citizen?
> (3) Where were you born?
> (4) What official documentation do you possess to prove your citizenship?
>
> Please provide that documentation.

Ohio Rev. Code § 3505.20(A)(1)–(4). The documentation required to cast a non-provisional ballot was "a certificate of naturalization," and the person was required to "declare under oath that the person is the identical person named in the certificate." Ohio Rev. Code § 3505.20(A).

On August 29, 2006, Plaintiffs filed a complaint seeking declaratory and injunctive relief against enforcement of Ohio Rev. Code § 3505.20. *See generally* Compl., ECF No. 1. On October 4, 2006, the Court declared Ohio Rev. Code § 3505.20(A)(2)–(4) unconstitutional and permanently enjoined its enforcement. *See generally* Order, ECF No. 18. On October 26, 2006, this Court issued an opinion providing more detail behind its decision. *See generally Boustani v. Blackwell*, 460 F. Supp. 2d 822 (N.D. Ohio 2006). There, the Court explained that the provisions "impose[d] an undue burden on the fundamental right to vote of naturalized citizens in Ohio; since the statute, as amended, subject[ed] naturalized citizens to disparate treatment in violation of the Fourteenth Amendment of the United States Constitution." *Id.* at 827. Although the General Assembly never

4

repealed or amended Ohio Rev. Code § 3505.20(A)(2)–(4), the Secretary has not enforced those provisions since the Court's 2006 judgment.

**II. House Bill 458 makes changes to Ohio's voter identification requirements.**

The law has changed considerably since this Court issued the permanent injunction in 2006. First, on November 8, 2022, Ohio voters amended Article 5, Section 1 of the Ohio Constitution to expressly provide that "[o]nly a citizen of the United States . . . is entitled to vote" in Ohio. And, in early 2023, the General Assembly enacted Substitute House Bill 458 ("HB 458") (effective April 7, 2023), making several important changes to Ohio's elections laws.

Among HB 458's changes were new identification requirements for in-person voting. Under the new law, *all* voters must present a valid form of photo identification when voting in person, whether on Election Day or by in-person absentee voting. Ohio Rev. Code §§ 3505.18(A), 3509.051(B).[1] Acceptable forms of identification include: an Ohio driver's license, a state identification card (which anyone who is 17 or older can get free of charge, Ohio Rev. Code §§ 4507.233(A), 4507.50(A)(1)(a)), an interim identification form issued by the registrar of motor vehicles or deputy registrar, a United States passport or passport card, a U.S. military identification card, Ohio National Guard identification card, or a U.S. Department of Veterans Affairs identification card. Ohio Rev. Code § 3501.01(AA)(1). If a voter cannot provide one of these valid forms of photo identification, then the voter may cast a provisional ballot. Ohio Rev. Code § 3505.18(A)(2).

---

[1] Before HB 458 went into effect, voters were not required to show photo ID to vote in person. *Northeast Ohio Coalition for the Homeless v. LaRose, et al.* (*NEOCH*), No. 1:23-CV-00026, 2024 U.S.Dist. LEXIS 3262, at *27 (N.D. Ohio Jan. 8, 2024) (Nugent, J.).

HB 458 also required that any driver's license or state ID card issued to a non-U.S. citizen include a notation specifically indicating that the person is a noncitizen. Ohio Rev. Code §§ 4506.11(A)(13), 4507.13(A)(2)(j), 4507.52(A)(2). Individuals who were issued a driver's license or state ID card bearing the "noncitizen" designation may obtain an updated license or ID card for free if they later become a U.S. citizen. Ohio Rev. Code § 4507.233(A).

### III. The new voter identification provisions are upheld as constitutional in *NEOCH*.

On January 6, 2023, a group of plaintiffs filed a lawsuit in this Court challenging several components of HB 458, including the voter identification requirement. *See generally NEOCH*, 2024 U.S.Dist. LEXIS 3262. The plaintiffs claimed that the voter identification provisions in HB 458 violated the First and Fourteenth Amendments to the United States Constitution as unconstitutional infringements on their right to vote. *Id.* at *6.

On January 8, 2024, Judge Nugent granted summary judgment in favor of Secretary LaRose, finding that HB 458's voter identification provisions withstood constitutional scrutiny. *Id.* at *25–57. Judge Nugent applied the *Anderson-Burdick* framework and found that because the photo identification requirement imposed only a minimal burden on voters, rational basis scrutiny applied, which the requirement survived. *Id.*

In upholding the law, Judge Nugent stated that "[g]iven what appears to be a real possibility that *all* Ohio registered voters may in fact already possess a qualifying photo-ID, it is hard to conceive how the photo-ID requirements of HB 458 actually *prevents* someone from voting, or even impedes them from voting." *Id.* at *30. Accordingly, "obtaining a photo-ID in Ohio presents at most a minimal burden to voters who choose to vote in person, and is not an unconstitutional burden on the right to vote." *Id.* at *33 (citation omitted).

**IV. The Secretary takes steps to implement the new voter identification provisions.**

The November 5, 2024, General Election is the first presidential general election since HB 458's voter identification provisions became effective. Ex. A, Burnett Aff. ¶ 17. On June 21, 2024, the Secretary of State's office issued Directive 2024-09 which required, among other things, precinct election officials to receive training on how to verify a voter's identity and acceptable and unacceptable forms of identification, including photo IDs issued to noncitizens.[2] Consistent with this, poll workers have received training about HB 458's changes to voter identification requirements, the "noncitizen" designation on photo identification, and how to assist individuals who present a noncitizen identification. Burnett Aff. ¶ 27.[3]

Additionally, starting in August 2024, the Secretary began issuing letters to all individuals whom the Secretary had reason to believe were citizens but may still possess a "noncitizen" identification. *Id.* ¶ 19; Ex. A-1. In these letters, the Secretary encouraged those individuals to update their information with the BMV so they could obtain a new driver's license or identification card before the General Election. Burnett Aff. ¶ 19; Ex. A-1.

To minimize any confusion at the polls, on October 2, 2024—before early voting began on October 8, 2024—the Secretary updated Form 10-U and sent it to local election officials. Burnett Aff. ¶ 26; Ex. A-3. Form 10-U is used when a voter's eligibility is challenged for any reason, such

---

[2] *See* Ohio Secretary of State, Directive 2024-09 (June 21, 2024), https://www.ohiosos.gov/globalassets/elections/directives/2024/directive-2024-09-november-readiness-election-administration.pdf.

[3] *See State ex rel. Strbich v. Montgomery Cnty. Bd. of Elections*, 2024-Ohio 4933, ¶¶ 1–10, 18–21 (Ohio 2024) (ordering board of elections to provide training to precinct election officials consistent with Secretary LaRose's Directive 2024-09 "regarding the use of unacceptable forms of photo identification for the purpose of voting, including the use of photo identification issued to noncitizens").

as residency, age, or citizenship status. Burnett Aff. ¶ 25. It serves as a fact-based tool for election officials to verify a voter's qualifications. *Id.*

Despite the training of poll workers, the Secretary's Office received questions from numerous county boards of elections about the noncitizen designation on driver's licenses and state identification cards. *Id.* ¶ 28. Among those were questions about what to do when a voter presents a noncitizen ID, and the process to cure a provisional ballot if the voter became a citizen but did not receive an updated identification card from the BMV. *Id.* In response to the boards' questions, the Secretary's Office emailed the county boards of elections on October 18, 2024, providing additional guidance and instructions on how to assist voters with "noncitizen" identification. *Id.* ¶ 29; Ex. A-4.

This guidance provided instructions on how to enforce Ohio's new citizenship and voter photo identification requirements. Ex. A-4. Those instructions provided that all persons who are registered to vote and who present a valid, non-expired form of photo identification without a "noncitizen" designation are entitled to vote in person using a regular ballot, without additional documentation. *Id.* Only persons who specifically present a form of photo identification with a "noncitizen" designation or otherwise unauthorized form of photo identification are required to present additional proof of citizenship. *See* Burnett Aff. ¶ 25. Citizenship may be proven by presenting a variety of documents including among other options, a U.S. Passport, Certificate of Citizenship, or a Certificate of Naturalization. *Id.* ¶ 22. Persons who present this additional documentation at the time of voting are entitled to vote using a regular, non-provisional ballot. *Id.* ¶ 21.

Thus, although Ohio law generally provides that an election official can challenge the qualifications of an individual who is voting in person, Ohio Rev. Code § 3505.20, the Secretary

has circumscribed that discretion. *See id.* ¶ 25. The Secretary's email clarified that citizenship-based challenges—and the corresponding use of Form 10-U—will occur if and only if an individual presents a noncitizen identification. Ex. A-3. If a voter presents a noncitizen identification but does not present any of the additional documents showing proof of citizenship, they may cast a provisional ballot. Burnett Aff. ¶ 11.

**LAW AND ARGUMENT**

**I. This Court has the authority to alter or dissolve the permanent injunction based on changed circumstances.**

"Courts have long held the power to modify injunctions, whether to narrow or broaden them." *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426 (6th Cir. 2016). "Injunctions frequently demand 'continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief.'" *Id.* (citing *Sys. Fed'n No. 91, Ry. Employes' Dep't v. Wright*, 364 U.S. 642, 647 (1961)). "Courts thus may exercise their 'sound judicial discretion' to modify an injunction 'if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.'" *Id.*; *accord* Fed. R. Civ. P. 60(b)(5) (permitting a court to grant relief when "applying [the judgment] prospectively is no longer equitable"); *Rufo v. Inmates of Suffolk Jail*, 502 U.S. 367, 380 (1992) (same).

"Where 'significant changes in the law or circumstances' threaten to convert a previously proper injunction 'into an instrument of wrong,' the law recognizes that judicial intervention may be necessary to prevent inequities. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (quoting *Salazar v. Buono*, 559 U.S. 700, 714–15 (2010) (plurality opinion)). "However, such judicial intervention is guarded carefully: To obtain modification or dissolution

of an injunction, a movant must demonstrate significant changes in fact, law, or circumstance since the previous ruling." *Id.* (citation and quotation marks omitted). "Ongoing injunctions should be dissolved when they no longer meet the requirements of equity." *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994) (en banc).

**II. Because Ohio law no longer imposes disparate burdens on naturalized citizens, the continuation of the permanent injunction is unnecessary, and it should be dissolved.**

    **A.    An equal protection violation occurs when a disparate burden is placed on an individual's rights based on their national origin.**

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

"Generally, laws that apply evenhandedly to all unquestionably comply with equal protection." *Vacco*, 521 U.S. at 796. Therefore, some form of unequal treatment of a suspect class is generally a prerequisite of an equal protection claim. *See Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992); *see also Plyler v. Doe*, 457 U.S. 202, 216–17 (1982).

    **B.    Ohio voters are now broadly required to prove their citizenship.**

The Court's reasoning for the permanent injunction was premised on the disparate treatment of naturalized citizens. *Boustani*, 460 F. Supp. 2d at 825–27. The Court noted that, at that time, "native-born citizens [we]re not required to show any proof of their citizenship," but naturalized citizens were required. *Id.* at 826. That is no longer the case. As of 2023, Ohio voters

10

are now broadly required to provide proof of citizenship, either by presenting an ID whose issuance required proof of citizenship or by providing documentation at the polling place.[4] Ohio Const. art. 5, § 1; *see also* Burnett Aff. ¶¶ 9–10. As a result, the law no longer makes a distinction between native-born and naturalized citizens. And without disparate treatment, there is no equal protection violation. *See Vacco*, 521 U.S. at 796.

The updated scheme also obviates the Court's previous concern about poll workers "'profiling' voters." 460 F. Supp. 2d at 827. Election officials no longer possess "an unfettered ability to challenge on the basis of appearance, name, looks, accent or manner." *Id.* To the contrary, a voter's citizenship status will be challenged—and Form 10-U will be used—only in a very narrow set of circumstances. Burnett Aff. ¶ 25. Specifically, the guidance provided by the Secretary's Office applies *only* to voters who have specifically presented the board with a valid, unexpired state-issued ID that indicates they are a noncitizen. *See* Ex. A-3. None of the factors above—appearance, accent, manner, etc.—are at play here. The only question is whether the legally required photo ID identifies the voter as a "noncitizen." And if it does, the process here provides an immediate opportunity to cure and cast a regular ballot, rather than a provisional ballot.

This situation is akin to *Chico-Polo v. Embarq Payphone Servs., Inc.*, No. 11-1427, 2012 U.S. App. LEXIS 27237 (6th Cir. Mar. 15, 2012). There, Michigan inmates argued they were being discriminated based on their national origin because they were unable to make calls outside North America or the U.S. Territories. *Id.* at *2, 6. The Court disagreed in the first instance because "all Michigan inmates regardless of national origin are prohibited from making telephone calls outside

---

[4] The only narrow exceptions to this rule are those who vote using military or Veteran's Affairs ID.

North America or the U.S. Territories. Thus, MDOC's telephone policy is not drawn upon Chico-Polo's national origin." *Id.* at *6.

So too here. Just as all Michigan inmates in *Chico-Polo* were restricted from making calls outside North America, nearly all Ohio voters are required to prove their citizenship. That burden is now equally shared, so there is no longer an equal protection violation. *See Vacco*, 521 U.S. at 796; *see also Chico-Polo*, 2012 U.S. App. LEXIS 27237 at *6.

### C. In light of these significant changes in the law and circumstances, this Court should dissolve the permanent injunction.

An illustrative example of changed circumstances necessitating dissolution of a permanent injunction comes from *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 466 F.3d 391 (6th Cir. 2006). There, the district court enjoined the application of a local licensing and permitting scheme governing "sexually oriented" businesses. *Id.* at 393. The district court held, and the Sixth Circuit agreed, that the ordinance did not provide prompt judicial review, and the term "sexually oriented" was overly broad. *Id.* In response, the municipality amended the provision to provide judicial review and to narrow the definition of "sexually oriented." *Id.* On the municipality's motion, the district court found the ordinance was no longer unconstitutional and dissolved the permanent injunction. *Id.* at 393–94. The Sixth Circuit unanimously affirmed, finding that because "the constitutional problems with the Ordinance had been rectified," dissolution was appropriate. *Id.* at 395.

Here, as in *Deja Vu*, the legal landscape changed in a way that cures the previous constitutional violation. It is no longer the case that naturalized citizens are treated differently. Rather, nearly all voters are required to prove their citizenship before voting, regardless of whether they are native-born or naturalized citizens. Just as the municipality in *Deja Vu* cured the

12

constitutional violations by adding judicial review and a narrower statutory definition, here, Ohio's citizens, through amending the state constitution, and the General Assembly, through HB 458, have removed the risk of unequal treatment by placing the same burden on all voters.

Simply put, the permanent injunction issued by this Court in 2006 "served its purpose, and there is no longer any need for the injunction." *Deja Vu*, 466 F.3d at 395; *see also Sweeton*, 27 F.3d at 1164 ("[A]n equitable remedy should be enforced only as long as the equities of the case require."). Accordingly, the permanent injunction should be dissolved. *Id.*

## CONCLUSION

For these reasons, the Court should dissolve the permanent injunction issued on October 4, 2006, and deny Plaintiffs' emergency motion to enforce the judgment as moot.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0068762)*
   *Counsel of Record*
HEATHER L. BUCHANAN (0083032)
MICHAEL A. WALTON (0092201)
MARK D. TUCKER (0036855)
GREGORY A. RUSTICO (0104103)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, OH 43215-3428
Tel: (614) 466-2872 | Fax: (614) 728-7592
Julie.Pfeiffer@OhioAGO.gov
Heather.Buchanan@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Mark.Tucker@OhioAGO.gov
Gregory.Rustico@OhioAGO.gov

*Counsel for Ohio Secretary of State Frank LaRose*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2024, a copy of the foregoing *Defendant's Combined Motion to Dissolve the Permanent Injunction and Memorandum in Opposition to Plaintiffs' Emergency Motion to Enforce the Permanent Injunction* was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties have access to this filing through the Court's system.

/s/ *Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General

14