UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA BOUSTANI, et al., | ) | CASE NO. 1:06CV2065 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| FRANK LAROSE, in his official | ) | |
| capacity as Ohio Secretary of State, | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Plaintiffs' Emergency Motion (ECF DKT #53) to Enforce the Judgment Via Civil Contempt Proceedings. For the following reasons, the Motion is denied.

**I. BACKGROUND**

In 2006, the Ohio General Assembly passed House Bill 3 which required naturalized citizens, who were challenged at the polling place by "any challenger, any elector then lawfully in the polling place, or by any judge or clerk of elections" as unqualified on the ground that the voter is not a citizen, to provide their certificate of naturalization in order to vote. R.C. § 3505.20(A).

On August 29, 2006, individual naturalized citizens and organizations with naturalized citizen members registered and eligible to vote filed the above-captioned lawsuit to enjoin enforcement of the 2006 amendments to R.C. § 3505.20(A). The amended provisions required naturalized citizens, unlike native-born citizens or those acquiring citizenship through the naturalization of their parents, to produce for inspection a certificate of naturalization before

being able to vote. This imposed an unnecessary and undue burden on those who could not produce the certificate on demand at the polls. On October 4, 2006, after hearing and upon agreement of the parties, the Court permanently enjoined enforcement of R.C. § 3505.20(A)(2), (3) and (4). In a subsequent detailed Order, the Court concluded:

> Because amended R.C. § 3505.20(A)(2), (3), (4), and the text immediately following, imposes an undue burden on the fundamental right to vote of naturalized citizens in Ohio; since the statute, as amended, subjects naturalized citizens to disparate treatment in violation of the Fourteenth Amendment of the United States Constitution; and since the implementation of the law offends constitutional sensibilities by categorizing naturalized individuals as "second-class citizens", and by promoting fraud or deceit in order to avoid its impact on the free exercise of their franchise, this Court finds amended R.C. 3505.20(A)(2), (3), and (4), *et seq.* unconstitutional.

(ECF DKT #20 at 6-7).

Form 10-U, titled "Affidavit-Oath-Examination of Person Challenged" is the form the Secretary of State provides to precinct election officials when there are challenges to a voter's eligibility at a polling place. Part A of Form 10-U deals with challenges that a person offering to vote is not a citizen. The form cites to authority under R.C. § 3505.20.

In October of 2024, the Secretary of State issued a revised version of Form 10-U, reinstating the same questions directed to naturalized citizens that were prohibited by the Court's 2006 Injunction Order. Challenged persons are unable to vote a regular ballot and must vote a provisional ballot if they fail to provide the required documentation.

On October 23, 2024, six of the original Plaintiffs — Laura Boustani, Dagmar Celeste, Margaret Wong, Service Employees International Union District 1199, CAIR-Ohio and Federation of India Community Associations — brought this Emergency Motion (ECF DKT #53) asking the Court under its civil contempt authority to enforce the 2006 permanent injunction and order the Secretary of State to comply.

The nation's Presidential Election is set for November 5, 2024. Absentee and Early In-Person Voting began on October 8, 2024.

## II. LAW AND ANALYSIS

**Standing**

As Plaintiffs in the original captioned lawsuit, the movants contend that they have standing to challenge the Secretary of State's alleged violation of the Court's Injunction Order and to seek enforcement by way of civil contempt.

The Constitution limits federal court jurisdiction to actual "cases" or "controversies." U.S. Const., art. III, § 2, cl. 1. Standing to sue is one aspect of the case-or-controversy requirement. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). In order to assert constitutional standing a plaintiff must have "'such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). Plaintiff bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"To satisfy Article III's standing requirements, a plaintiff must show: '(1) [she] has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–07 (6th Cir. 2007); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). For an injury

to be particularized, it must "affect the plaintiff in a personal and individual way." *Spokeo v. Robbins*, 136 S.Ct. 1540, 1548 (2016); *Soehnlen*, 844 F.3d at 581-82; see also *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury").

An organization may have standing either in its own right or on behalf of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Memphis A. Philip Randolph Inst.*, 978 F.3d at 386 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 181.).

To emphasize further, Article III standing is an indivisible element of federal court subject matter jurisdiction and want of subject matter jurisdiction cannot be waived by the parties. *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939); *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 540 (6th Cir. 2006). Moreover, "[to] ensure a case remains 'fit for federal-court adjudication,' the parties must have the necessary stake **not only at the outset of litigation, but throughout its course**." *Arizonans for Official English*, 520 U.S. at 67. (Emphasis added).

**Civil Contempt**

Plaintiffs contend that they have satisfied their burden entitling them to relief through a civil contempt order.

"Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction."

*Taggart v. Lorenzen*, 587 U.S. 554, 560–61 (2019). *See also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

The Supreme Court, in *Taggart*, 587 U.S. at 561, has cautioned that civil contempt "should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct." *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S.Ct. 618, 28 L.Ed. 1106 (1885). This standard demonstrates that civil contempt is considered a "severe remedy." *See Taggart,* 587 U.S. at 561.

**Relevant law**

The legal landscape has significantly changed in the nearly two decades since the Court issued its Injunction Order.

Effective March 20, 2019, the text of R.C. § 3505.20, although retaining the language in subsection (A)(1) through (4), reads that: "Any person offering to vote may be challenged at the polling place by any precinct election official." The previous lengthy list of "challengers" is now omitted; likely limiting the risk of random challenges based on appearance or name or accent.

On November 8, 2022, the voters approved Article 5, Section 1 of the Ohio Constitution to permit only citizens of the United States to vote in Ohio's elections.

On April 7, 2023, an omnibus election-administration law known as House Bill 458 (HB 458) went into effect, changing a number of Ohio statutes.

Since HB 458, all voters are required to provide photo identification when voting in person. R.C. §§ 3505.18(A)(1); 3509.051. Permissible types of identification for in-person voting are: Ohio driver's licenses, state identification cards, interim identification forms issued

by the registrar or deputy registrar of motor vehicles, U.S. passports or passport cards, U.S. military identification cards, Ohio National Guard identification cards, or U.S. Department of Veterans Affairs identification cards.  R.C. § 3501.01(AA)(1).

HB 458 also requires a driver's license or state identification card issued to a non-U.S. citizen to include a notation designating that the person is a non-citizen.  R.C.§ 4507.13(A)(2)(j).

If an individual voter cannot provide a valid form of photo identification or has a non-citizen designation on the back of the identification card and fails to provide documentation of citizenship, then that individual may cast a provisional ballot.  R.C. § 3505.18(A)(2).

Persons with non-citizen identification cards who subsequently become citizens may receive a *free* updated identification card from the BMV.  (ECF DKT #66-1, Exhibit A, Affidavit of Deputy Assistant Secretary of State and State Elections Director Chris Burnett at ¶ 15).

For a provisional ballot to count, the voter must appear at the board of elections and provide a valid form of photo identification or other documentation within the "cure period," i.e., four days after Election Day.  R.C. § 3505.181(B)(7)(b).

In light of all of the changes brought about by HB 458, and in preparation for the November 2024 Presidential Election, the Secretary of State's Office provided poll workers with training, guidance and instructions on implementing the photo identification requirements.  (ECF DKT #66-1, Exhibit A, Affidavit at ¶¶ 25-29).

The Secretary of State's Office also issued letters in August of 2024 to individuals the Office had reason to believe were citizens but who may still possess identification cards with the non-citizen designation.  The letter confirmed the individuals' citizenship and advised them to update their records, driver's licenses or state-issued photo I.D.'s for voting purposes pursuant to

the changes in the election laws. (ECF DKT #66-1, Exhibit A-1).

Upon consideration of the parties' briefing and evidence submitted, the Court finds that the naturalized citizen Plaintiffs have not demonstrated actual or imminent concrete injury from Defendant Secretary of State's implementation of Revised Form 10-U pursuant to R.C.§ 3505.20 for constitutional standing.

Plaintiffs insist that as original Plaintiffs they have the necessary standing. In 2006, Plaintiffs submitted affidavits showing the harm or imminent harm they would suffer because they intended to vote and may not have been able to produce their certificates of naturalization if challenged at the polling place. However, now in 2024, Plaintiffs have not come forward with any necessary credible evidence of their basis for Article III standing. They have offered no affidavits at all; none saying that these six Plaintiffs intend to vote and possess a photo identification card with the non-citizen designation, subjecting them to further questioning and proof or be restricted to voting provisionally. They also fail to attest that they did not receive the August 2024 notification letter from the Ohio Secretary of State's Office, providing an opportunity to cure any deficiencies in their photo identification cards which **all** Ohioans must present when they appear to vote in person.

In their Reply Brief (ECF DKT #67), Plaintiffs contend that Burnett's Affidavit was created solely for use in this litigation; that nowhere does Burnett state that the discretion of election officials to challenge voters is limited; and that "[n]owhere does Revised Form 10-U state that *only* individuals who present a license with a noncitizen identifier may be challenged."

First, the Court considers these statements to be speculative arguments only. Second, the Court holds Defendant to its representation in the Opposition Memorandum (ECF DKT #66 at 8)

that: "Only persons who specifically present a form of photo identification with a "noncitizen" designation or otherwise unauthorized form of photo identification are required to present additional proof of citizenship."

Not only have Plaintiffs failed to satisfy their burden of establishing by clear and convincing evidence that Defendant has violated the Court's 2006 Permanent Injunction Order, but unlike in 2006, Plaintiffs have not demonstrated an undue burden on their fundamental right to vote nor that they have suffered disparate treatment so as to warrant the exercise of the Court's remedial powers on their behalf.  *Warth*, 422 U.S. at 498-99.

Plaintiffs have failed to show "the necessary stake not only at the outset of litigation, but throughout its course.  Plaintiffs lack Article III standing  —  an indivisible element of federal court subject matter jurisdiction.

### III. CONCLUSION

Therefore, for these reasons, Plaintiffs' Emergency Motion (ECF DKT #53) to Enforce the Judgment Via Civil Contempt Proceedings is denied.  Furthermore, the Court finds it improvident and unnecessary to address Defendant's request (incorporated in the Opposition Memorandum, ECF DKT #66) to dissolve the Permanent Injunction.

**IT IS SO ORDERED.**

**DATE: 10/30/24**         s/Christopher A. Boyko
                           **CHRISTOPHER A. BOYKO**
                           **United States District Judge**